IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

DERYL L. BOSTIC,            )
                            )
       Plaintiff,           )
                            )
v.                          )   Case No. CIV-16-448-KEW
                            )
NANCY A. BERRYHILL, Acting  )
Commissioner of Social      )
Security Administration,    )
                            )
       Defendant.           )

## OPINION AND ORDER

Plaintiff Deryl L. Bostic (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 53 years old at the time of the ALJ's latest decision. Claimant completed his high school education. Claimant has worked in the past as a machine operator, warehouse supervisor, sign changer, machine cleaner, and fork lift operator. Claimant alleges an inability to work beginning August 27, 2010 due to limitations resulting from diabetes, hypertension, coronary artery disease, and arthritis.

**Procedural History**

On September 27, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. After an administrative hearing, Administrative Law Judge ("ALJ") David Gutierrez entered an unfavorable decision which was subsequently reversed and remanded by the Appeals Council for further proceedings.

On March 14, 2014, ALJ Bernard Porter conducted an additional hearing by video with Claimant appearing in Paris, Texas and the ALJ presiding from McAlester, Oklahoma. By decision dated August 15, 2014, the ALJ again denied Claimant's request for benefits. The Appeals Council denied review on June 7, 2016. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with limitations.

**Errors Alleged for Review**

4

Claimant asserts the ALJ committed error in (1) failing to properly evaluate the medical source evidence; (2) failing to perform a proper determination at step five; and (3) failing to perform a proper credibility analysis. Claimant also contends the Appeals Council failed to properly evaluate evidence submitted directly to it.

**Consideration of the Medical Source Evidence**

In her decision, the ALJ found Claimant suffered from the severe impairments of diabetes mellitus with peripheral neuropathy, coronary artery disease, cervical disc disease with radiculopathy, hypertension, and degenerative joint disease of the left hip. (Tr. 301). The ALJ determined Claimant retained the RFC to perform light work. In so doing, he found Claimant could lift and/or carry 20 pounds occasionally and ten pounds frequently; stand and/or walk for six hours total during an eight hour workday; sit for six hours total during an eight hour workday; and push/pull as much as he could lift/carry. Claimant could occasionally use foot and hand controls; occasionally reach overhead; and frequently handle, finger, and feel. Claimant could occasionally climb ramps and stairs but never climb ropes, ladders, and scaffolds or crawl. He could frequently balance, stoop, and crouch and occasionally kneel. He must avoid exposure to unprotected heights, moving mechanical

parts, and temperature extremes. Claimant required a sit/stand option, which allows for a change in position at least every 30 minutes. He may be off task up to five percent of the workday and miss up to one day per month. (Tr. 304).

Claimant asserts that the ALJ failed to properly evaluate the opinion of his primary treating physician, Dr. Victoria Pardue. On February 28, 2011, Dr. Pardue completed a form entitled "Treating Physician's Clinical Assessment", setting forth her opinion on Claimant's functional limitations. (Tr. 689-91). In the assessment, Dr. Pardue stated Claimant could occasionally lift up to ten pounds; could "less than occasionally" grasp; push/pull with his arms; and engage in fine manipulation. Claimant could not bend, climb, balance, stoop, kneel, crouch, or crawl. He could stand/walk for less than two hours per regular work day. (Tr. 689). Claimant could also sit for less than two hours per regular work day. He required "complete freedom to rest frequently without restriction" in order to "relieve pain arising from a documented medical impairment." The clinical findings for these restrictions was severe peripheral neuropathy and diabetes. She noted swelling, muscle spasms in the feet, and numbness in the legs bilaterally. In narrative form, Dr. Pardue stated "physical impairment lower extremities, pain unable to stand or sit for long period of time." She considered Claimant's pain as "moderate to severe." (Tr. 690).

6

She estimated Claimant's pain would continuously interfere with his concentration and attention. She stated he would have to take unscheduled breaks every 30-45 minutes of a duration of 30–45 minutes and that he would need to lie down. She also found Claimant's legs would have to be elevated at a 25-35 degree angle for 65% of an eight hour workday. He would have good days and bad days and he would require to be absent from work more than four days a month. (Tr. 691).

On March 11, 2014, Dr. Pardue stated in her treatment notes that "[i]t is in my medical opinion that this pt is completely disabled due to multiple medical problems and the severity of the disease process is now end stage." (Tr. 801).

The ALJ cited extensively from Dr. Pardue's treatment record. (Tr. 302-03). He gave her opinion on Claimant's restrictions "diminished weight", finding it was not fully supported or consistent with the medical evidence. The ALJ concluded (1) Dr. Pardue's finding that Claimant was "completely disabled" invaded the purview of the Commissioner; (2) the degree of limitation found by Dr. Pardue was not supported by her treatment notes; (3) Dr. Pardue cited to a non-existent ultrasound of Claimant's lower extremity; (4) no muscle spasms were noted in the treatment notes before or after the date of the medical source statement; (5) no indication in the record indicated that any treating source advised that

7

Claimant elevate his feet; (6) Dr. Pardue only reported "fair" compliance with treatment, noting a weight increase between appointments; (7) Dr. Pardue found normal range of motion of all major muscle groups; (8) no sensory exam was completed. The ALJ also concluded that part of the source statement form had been completed prior to Dr. Pardue's checking off limitations due to different handwriting on the form. Despite Dr. Pardue limiting Claimant to two hours of sitting, Claimant testified that he watched his daughter perform at football games and concerts, he goes to the movies, and he can sit in church for an hour or more. While Dr. Pardue noted Claimant was losing grip strength, nothing abnormal was reported in his hands, his bone scan was normal, and his fracture risk was low. No diabetic eye exams were in the record. Claimant failed to follow up with pain management, neurology, endrocrinologist, orthopedist, and ophthalmologist, despite insurance. No kidney studies were performed. The ALJ concluded all of these inconsistencies rendered Dr. Pardue's opinion "less probative." (Tr. 309-10).

After the ALJ's decision, Dr. Pardue issued an additional source statement in September of 2014 which indicated Claimant could not hold anything due to grip strength, could not button clothes, and the pain was "severe." On the question of consistency between Claimant's impairments and his symptoms and functional limitations,

8

it was noted that Claimant or Dr. Pardue was "getting frustrated [with] appeal case." (Tr. 284-85).

It should be noted also that on the date that Dr. Pardue authored the first source statement, her examination findings were largely normal. She noted Claimant was positive for joint stiffness and leg pain bilaterally but found normal range of motion of all major muscle groups, no limb or joint pain with range of motion. (Tr. 697).

It is well-established that any time an ALJ rejects the opinion of a treating physician or fails to give it controlling weight, he must provide substantiation for that rejection. An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the

treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ provided extensive and accurate justification for reducing the weight afforded Dr. Pardue's opinion. Much of the inconsistency was brought about by Dr. Pardue's own treatment notes and the variances arising from the extreme findings of limitation

as compared to the clinical findings in her records. Moreover, the opinion of the consultative examiner Dr. Terry L. Kilgore differs considerably with Dr. Pardue's source statement. Dr. Kilgore found Claimant had decreased sensation below the knees and foot pain but had no sores, a stable gait, no assistive device for ambulation, no muscle spasms, and the ability to effectively oppose thumb and fingertips, manipulate small objects, and grasp tools. (Tr. 675-76, 679). The RFC assessment made by Dr. Suzanne Roberts on December 27, 2010 indicated much less restrictive limitations. (Tr. 681-82). This Court finds no error in the ALJ's assessment of Dr. Pardue's opinion and findings of inconsistency with the medical record. Therefore, the diminished weight given the opinion was justified and warranted.

Claimant also suggests that the ALJ was obligated to recontact Dr. Pardue before reducing the weight provided the opinion. This duty, however, only arises if the evidence received from the treating source was inadequate. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002). In this case, the reduced weight was justified due to the inconsistency between the source statement findings of limitation and Dr. Pardue's treatment records as well as the findings of the consultative and reviewing physicians. No duty to recontact existed.

11

**Step Five Determination**

Claimant contends the ALJ and the vocational expert erred in concluding that a five percent off task requirement would not preclude gainful employment. The ALJ properly relied upon the vocational expert's testimony that the work identified could be performed with this additional restriction. (Tr. 372). Claimant has cited to no research which would indicate that, as a matter of course, a five percent off task limitation precludes employment. The addition of a statement of a vocational expert submitted by Defendant after the issuance of the ALJ's decision does not alter the propriety of the conclusion reached by the ALJ based upon the sworn testimony of the vocational expert retained at the hearing.

**Credibility Determination**

Claimant challenges the ALJ's credibility findings. The ALJ concluded Claimant was not entirely credible, citing to his activities such as sitting for church and his daughter's activities and the lack of objective support from credible medical sources which this Court has previously discussed herein.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are

peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

    The ALJ relied upon appropriate factors in evaluating the credibility of Claimant's statements. The nature of Claimant's treatment, the objective medical testing, and the inconsistencies between the claimed restrictions and Claimant's activities all form specific and legitimate reasons for the ALJ's questioning of Claimant's credibility.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 21st day of March, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE